UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

STEPHEN MCNEELEY,

        Plaintiff,

v.                                     Case No:  2:12-cv-488-FtM-38MRM

NORMAN WILSON, SERGIO
BERTUZZI, ANTHONY FENECH,
NICHOLAS RISI, DAVID COX and
MARK GEYER,

        Defendants.

_____/

**OPINION AND ORDER**[1]

      This matter comes before the Court upon review of the: Defendants' respective motions for summary judgment filed on behalf of Defendants Risi and Cox (Doc. #210), Defendant Wilson (Doc. #211), Defendant Geyer (Doc. #212), Defendant Bertuzzi (Doc. #215), and Defendant Fenech (Doc. #216) in their "individual capacities" and supporting exhibits; Plaintiff's motion for partial summary judgment as to Geyer and Risi (Doc. #222) on the medical deliberate indifference claims, including supporting exhibits; and, Plaintiff's motion to modify the case management and scheduling order and for leave to amend the Third Amended Complaint (Doc. #228).

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

## I.   Procedural Background and Factual Summary[2]

Plaintiff Stephen McNeeley, a Florida prisoner with severe mental health issues, initiated this action just shy of the four-year statute of limitations by filing a *pro se* Complaint pursuant to 42 U.S.C. § 1983 alleging a violation of his rights under the Eighth Amendment when correctional officials from the Charlotte County Jail sprayed him with an excessive amount of chemical agents, placed him in a restraint chair, and delayed a decontamination shower for four hours, *inter alia*, on September 7, 2008.   Plaintiff, who was already serving a life sentence in the Florida Department of Corrections, was detained at the county jail on murder charges stemming from the murder of his sexual predator cellmate at Charlotte Correctional Institution.   Two years into this case and after difficulties with discovery, the Court found exceptional circumstances necessitated the appointment of counsel for Plaintiff in November 2014.   See Doc. #139.

Plaintiff is proceeding on his Second Amended Complaint (Doc. #160) filed by appointed counsel against Defendants in their individual and official capacities.[3]   The case centers on the alleged excessive use of force by Defendants Bertuzzi, Fenech, and Risi when a disputed amount of chemical agents were sprayed on Plaintiff.   Plaintiff was forcibly removed from his cell by the cell extraction team ("CERT") consisting of Geyer, Risi, and Wilson to be placed in four-point restraints where he then waited four hours for

---

[2]   In accordance with Federal Rule of Civil Procedure 56, the factual summary is taken from those portions of Defendants' and Plaintiff's statements of material fact.   The Court has also drawn nonmaterial facts from the record generally to clarify and streamline the narrative.

[3]   For a more thorough discussion concerning the capacities in which the Defendants are sued, see the order addressing Defendants' motion for a protective order and motion to quash trial subpoena of the Charlotte County Sheriff. Until Plaintiff specifies otherwise, this action contains official capacity claims.

a decontamination shower.   Plaintiff was then returned to the same contaminated cell (disputed by Defendants), where he continued to suffer from the effects of the chemical agents.

Leading up to this spraying incident on September 7, Plaintiff was released from the Charlotte County Jail's medical unit on suicide watch related to his mental health issues on September 3 (only four days before the incident occurred) and held in an administrative confinement cell.   Defendants claim they did not know Plaintiff had any mental health issues.

On September 5 and September 6 (two days before the spraying incident), other inmates and Plaintiff began complaining that inmate (Bruce Swartz or Schwarz) was driving them crazy with his yelling, screaming, beating on the walls, and making loud and disturbing noises incessantly day and night.   Despite the other inmates' and Plaintiff's requests that correctional officers stop Swartz, the conditions remained the same. Swartz was located in the cell directly beside Plaintiff.

Immediately preceding the spraying incident, in an effort to get correctional officials attention regarding the Swartz situation, Plaintiff papered the window of his cell and kicked on his cell door.   This resulted in Defendants Bertuzzi, Fenech, and Risi arriving at Plaintiff's cell with chemical agents.   Plaintiff provides evidence that at least three cans of agents were sprayed toward him in his cell (Wartenbach testified that five or six cans were sprayed).   Defendants provide evidence that Fenech had two cans of spray, which he says were not "full cans," and Bertuzzi sprayed his personal can of chemical agents. However, Defendants apparently do not maintain any sort of log at the correctional facility to report the amount of agents in the containers before and after use, or if they do, none

exist in this record.   Defendants assert that Plaintiff's sleeping pad[4] blocked application of the chemical agents.

During the course of the spraying incident pursuant to Bertuzzi's directive, Risi thrust a broomstick through the cell's food port to move aside Plaintiff's sleeping pad and hit Plaintiff's wrist.   A portion of the broomstick was lost into Plaintiff's cell.   The officers were able to pull Plaintiff's sleeping pad through the food port.   Plaintiff refused to surrender the "stick," or willingly move from the cell, unless correctional officers recorded his move by video.   Apparently the Defendants did not deem a video of this incident was appropriate, or perhaps the ability to record a video was not available, because they did not record the move, nor does any video recording of any portion of the incident exist.

CERT was called to forcibly remove Plaintiff from his cell.   Approximately forty-five minutes to one hour after the spraying incident, the CERT removed Plaintiff from the cell and placed him in four-point restraints. The hand restraints were applied so tightly that a nurse noticed Plaintiff was losing circulation in his hands after the first hour in restraints.   At that point, the restraints were loosened.   There is evidence supporting the fact that Plaintiff had ceased resisting.   Plaintiff remained in four-point restraints for approximately three more hours without having a decontamination shower.   Plaintiff complained that he was having extreme difficulty breathing, his skin was burning, and his eyes were red. Medical notes from Lori Schriebung, the jail nurse, reflect that Plaintiff's respiration was "normal," but she recalls Plaintiff complaining about his eyes and skin.[5]

---

[4] The Court refers to the "mattress" as a "sleeping pad" because a "pad" more accurately describes the "three inches" thick mattress.   Risi Depo. at 195.

[5]Interestingly, Nurse Lori indicates that her medical notes may have been changed by someone else.   See Depo. Nurse Lori, Vol. 2 at 79 ("So what is that? And I don't know

Her largest concern was Plaintiff's circulation since the restraints were applied so tightly. Depo. Nurse Lori, Vol. 2 at 35, 49, 78, 88-89.   She testified that "nothing went on as long as this," in reference to how long Plaintiff was held in restraints with chemical agents on him.   Id. at 91.

Four hours after being sprayed with chemical agents, Plaintiff was permitted a decontamination shower.   Plaintiff was then returned to the same cell which he claims was still contaminated with chemical agents.   Defendants assert the cell was decontaminated.   Plaintiff complained that his eyes were still bothering him and sought medical treatment up to three months after the spraying for his skin that was "cracked and peeling".   He was provided Tylenol, anti-inflammatories, and Triamcinolone cream for the skin irritation.   Plaintiff also sought treatment for his wrist, which he claims was hit by the broomstick.   He asserts psychology ramifications as well.

At this stage of the proceedings, the following claims remain: (1) an Eighth Amendment claim based on the alleged excessive use of force involving an excessive amount of chemical agents and broomstick against Defendants Bertuzzi, Fenech, and Risi (Counts One, Six, and Nine); (2) an Eighth Amendment deliberate indifference to Plaintiff's serious medical needs against Defendant Bertuzzi, Fenech, Cox, Geyer, and Risi (Counts Two and Seven); (3) an unlawful conditions of confinement claim against Defendants Bertuzzi and Wilson (Count Four); and (4) supervisory liability related thereto against Defendants Bertuzzi and Wilson (Count Three).   As relief, Plaintiff seeks monetary damages and any other relief deemed appropriate in law and equity.[6]

---

if that's me that wrote it.   I don't know why I would do that.   I would write a checkmark. It looks like somebody wrote something on top of that.")

[6]As discussed infra, pursuant to Plaintiff's motion to amend (Doc. #228), the Court

## II.  Motions for Summary Judgment

Defendants move for summary judgment in their individual capacities.[7]   In pertinent part, Defendants argue that Plaintiff failed to fully and properly exhaust his administrative remedies available to him at the Charlotte County Jail.   Defendants also raise qualified immunity to the extent the claims are brought against them in their individual capacities.

Plaintiff also moves for partial summary judgment on the medical deliberate indifference to a serious medical condition claim against Defendants Risi and Geyer, in their individual and official capacities, because they allowed chemical agents to remain on Plaintiff for over three hours after Plaintiff stopped resisting.

Based on the reasons that follow, the Court finds Defendants' motions for summary judgment are due to be denied because genuine issues of material fact remain that preclude entry of judgment.   The Court determines that Plaintiff did exhaust his administrative remedies and his inmate grievances put the Defendants on notice of his claims.   Defendants are not entitled to qualified immunity.   Finally, the Court also denies Plaintiff's motion for partial summary judgment concerning the deliberate indifference to a serious medical condition claim against Risi and Geyer due to their failure to allow Plaintiff a decontamination shower for three hours after Plaintiff stopped resisting.

_____

will grant the motion to allow Plaintiff to clarify or supplement the type of relief he seeks.

[7] Defendants fail to address any of Plaintiff's claims against the Defendants in their official capacities, which would essentially be a claim against the Charlotte County Sheriff. Therefore, the claims will proceed to trial against the Defendants in their official capacities.

### A.   Summary Judgment Standard of Review

"Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011)(internal quotations and citations omitted).   See also, Fed. R. Civ. P. 56(c)(2).   "The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial."   Moton, 631 F.3d at 1341 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).   The standard for creating a genuine dispute of fact requires the court to "make all *reasonable* inferences in favor of the party opposing summary judgment," Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (emphasis added), not to make all *possible* inferences in the non-moving party's favor.

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial." Beard v. Banks, 548 U.S. 521, 529 (2006) (citations omitted); Celotex, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).   If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party.   Beard, 548 U.S. at 529 (citations omitted); Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003).   "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are

'implausible.'" Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted).   Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact.   Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000).   "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."   Scott v. Harris, 550 U.S. 372, 380 (2007).

## B. Exhaustion of Administrative Remedies

Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to certain, specific claims, i.e. his noise torture from inmate Swartz; being placed back in the same cell that remained contaminated with chemical agents; that the chemical spray should not have been used on him due to his mental health problems; or, that the supervisory Defendants failed to train and supervise subordinates.   See generally Doc. #210 at 16; Doc. #211 at 7-8; Doc. #215 at 7-8; Doc. #216 at 5.

The Prison Litigation Reform Act, which amended The Civil Rights of Institutionalized Persons Act, provides as follows:

> (a) Applicability of administrative remedies.   No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted.*

42 U.S.C. § 1997e(a) (emphasis added).   Although prisoners are not required to plead exhaustion, Jones v. Bock, 549 U.S. 199, 216 (2007), "[t]here is no question that exhaustion is mandatory under the PLRA, and that unexhausted claims cannot be brought in court."   Id. at 211; see also Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011).

To "properly exhaust" administrative remedies, a prisoner must complete the administrative review process, as set forth in the applicable prison grievance process. Jones, 549 U.S. at 218.   A prisoner cannot satisfy the exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. Woodford, 548 U.S. at 92-103.   However, an administrative remedy that was not discovered, and which could not have been discovered through reasonable effort, until it was too late for it to be used is not an "available" remedy.   Goebert v. Lee County, 510 F.3d 1312, 1324 (11th Cir. 2007).   A remedy is not available if it is unknown or unknowable because such remedy is not "capable for use for the accomplishment of a purpose."   Id. at 1323.   Inmates are not required to "craft new procedures when prison officials demonstrate . . . that they will refuse to abide by the established ones."   Turner v. Burnside, 541 F.3d 1077, 1083 (11th Cir. 2008)(citations omitted).

Whether an inmate has exhausted his available administrative remedies is a factual issue that is properly made by the court.   Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008).   Thus, "[e]ven though a failure-to-exhaust defense is non-jurisdictional, it is like a defense for lack of jurisdiction in one important sense: Exhaustion of administrative remedies is a matter in abatement, and ordinarily does not deal with the merits."   Id. (footnote, internal quotations, and citations omitted).   The defense of exhaustion is properly raised in a motion to dismiss as a "matter of judicial administration." Id. at 1375.   Thus, the court is permitted to look beyond the pleadings to decide disputed issues of fact in connection with the exhaustion defense.   Id. at 1377, n.16.

Defendants generally point to the Charlotte County Jail's grievance process to support their argument that Plaintiff did not grieve specific parts of his claim concerning

the spraying incident.   See generally Doc. #210 at 16; Doc. #211 at 7-8; Doc. #215 at 7-8; Doc. #216 at 5.   Opposing this argument, Plaintiff argues that Defendants provided "no authority" to support that Plaintiff somehow failed to grieve his specific claims.   Doc. #236 at 18.   Plaintiff refers to his inmate grievances attached to his Amended Complaint, noting that all of his requests and appeals concerning the incident were denied.   Id. (citing Doc. #123-3).

The Court is not persuaded by Defendants' arguments that Plaintiff failed to exhaust his administrative remedies with regard to the aforementioned specific claims. The level of detail necessary in a grievance is governed by the prison's requirements, not the PLRA.   Jones, 549 U.S. at 217-18; see also Geter v. Turpin, Case No. 2:04cv153, 2006 WL 2583286, at *6 (N.D. Ga. Sept. 6, 2006) (regarding level of detail in the grievance concerning identity of future defendants)(citing Brown v. Sikes, 212 F.3d 1205, 1208 n. 3 (11th Cir. 2000)).   Defendants do not point to any rule set forth in the Charlotte County Jail's grievance process that mandated that Plaintiff be so specific in his inmate grievances to identify each part of his claim all stemming from the September 7 spraying incident.   To the contrary, Defendants' attached "grievance process" contains very general requirements and even allow for a "verbal grievance."   See Doc. #210, Exh. T, § 15.17, Grievance Process.   The inmate grievances Plaintiff attached to his Amended Complaint, all of which are entitled "inmate appeal/grievance/request form," show that Plaintiff complained about the use of force on September 7.   Plaintiff notified correctional officials that he believed the spraying incident constituted "cruel and unusual punishment," "excessive force" and "deliberate indifference" under the Eighth and Fourteenth Amendments of the United States Constitution.   Doc. #123-3.   Plaintiff

apprised correctional officers that officers used chemical agents on him, a broomstick, and involved CERT involvement.   Id.   Plaintiff later filed grievances or medical requests concerning the injuries he sustained from the incident and requested medical care.   Doc. #216, Defs' Exh. U.   The general rule under the PLRA is that the grievance need only provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit.   The Court finds the grievances Plaintiff submitted sufficiently apprised correctional officials at the Charlotte County Jail about the circumstances at issue in the instant action.

### C.   42 U.S.C. Section 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law.   Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001).   In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation.   Marsh, 268 F.3d at 1059; Swint v. City of Wadley, 51 F.3d 988 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).

### D.   Eighth Amendment Claims

#### 1.   Excessive Use of Force

The Eighth Amendment, which applies to the states through the Fourteenth Amendment, can give rise to claims challenging the excessive use of force.   Thomas v. Bryant, 614 F.3d 1288, 1305 (11th Cir. 2010) (reviewing categories of claims under the Eighth Amendment).   An excessive-force claim requires a two-prong showing: (1) an

objective showing of deprivation or injury that is "sufficiently serious" to constitute a denial of the "minimal civilized measure of life's necessities"; and, (2) a subjective showing that the official had a "sufficiently culpable state of mind." Id. (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994) (other citations omitted)).  It is the "unnecessary and wanton infliction of pain" caused by force used "maliciously and sadistically" for the very purpose of causing harm that constitutes cruel and unusual punishment.  Whitley v. Albers, 475 U.S. 312, 322 (1986).  Thus, where an Eighth Amendment claim is based upon allegations of excessive force, the question turns on whether the prison guard's "force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005).

To determine whether force was applied "maliciously and sadistically," courts consider the following factors: "(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999) (quotations and citations omitted).  When considering these factors, the courts "give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (citations omitted).

Moreover, in the context of prison discipline, a distinction is made between "punishment after the fact and immediate coercive measures necessary to restore order

or security." Ort v. White, 813 F.2d 318, 324-25 (11th Cir. 1987).   When a prison's internal safety is of concern, courts conduct a more deferential review of the prison officials' actions.   Williams v. Burton, 943 F.2d 1572, 1575 (11th Cir. 1991)(citations omitted).   Indeed, "[t]hat deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches in prison discipline." Whitley, 475 U.S. at 322; see also Bell v. Wolfish, 441 U.S. 520, 547 (1979).

While precedent is clear that correctional officers are permitted to use chemical agents to restore order when an inmate is violating the rules or not complying with officers' orders, any amount above and beyond what is necessary to stop that combative behavior can be deemed excessive and unlawful.   The Court finds that Plaintiff has sufficiently raised disputed issues of material fact as to the circumstances in which the chemical agents were applied, followed by confinement in four-point restraints, for four hours, without any decontamination shower (and for three hours while his behavior was compliant, such that Plaintiff should be permitted to try to prove his constitutional violations at trial.   Therefore, the Court finds the respective motions for summary judgment filed by Defendants Bertuzzi, Fenech, and Risi are due to be denied.

### 2.  Conditions of Confinement

The Supreme Court recognizes that a prisoner may challenge a condition of confinement, Rhodes v. Chapman, 452 U.S. 337, 347 (1981).   A two prong showing is required: an objective deprivation or injury that is "sufficiently serious" to constitute a denial of the "minimal civilized measure of life's necessities" and a subjective showing

that he official had a "sufficiently culpable" state of mind.    Thomas v. Bryant, 614 F.3d 1288, 1303 (11th Cir. 2010)(citations omitted).    "Because the Eighth Amendment draws its meaning from the evolving standards of decency that mark the progress of a maturing society," the objective harm inquiry is contextual in that it is responsive to contemporary standards.    Id. at 1304 (citations omitted).    "Extreme deprivations" are required to make out a claim for an unconstitutional condition of confinement.    Id. at 1304.    And, the state of mind required for a conditions of confinement claim is "deliberate indifference."    Id.

Here, Plaintiff's cruel and unusual conditions of confinement claim involves: (1) the noise torture by inmate Swartz; (2) use of chemical agents and broomstick on Plaintiff, despite his long history of mental health issues; (3) failure to decontaminate him for four hours; (4) placement in a cell contaminated with chemical agents for days; and (5) delay in providing medical treatment. The Court finds that Plaintiff has sufficiently raised disputed issues of material fact as to the circumstances of his conditions of confinement, such that Plaintiff should be permitted to try to prove a constitutional violation at trial. Therefore, the Court finds the respective motions for summary judgment filed by Defendants are due to be denied.

### 3.    Deliberate Indifference to a Serious Medical Condition

Plaintiff's claims against Defendants Bertuzzi, Fenech, Cox, Geyer, and Risi, in their individual and official capacities, concerning medical treatment while in custody invoke the protections of the Eighth Amendment.    Thomas, 614 F.3d at 1303 (citations omitted).    In order to state a claim for a violation under the Eighth Amendment, a plaintiff-prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."    Estelle v. Gamble, 429 U.S. 97, 106 (1976); see

also Hudson v. McMillan, 503 U.S. 1, 9 (1992) (opining that a prisoner must demonstrate a "serious" medical need "[b]ecause society does not expect that prisoners will have unqualified access to health care. . . ."). This showing requires a plaintiff to satisfy both an objective and a subjective inquiry. Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (citing Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000)). First, a plaintiff must show that he had an "objectively serious medical need." Id. "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (citations omitted). "The medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id.

Second, a plaintiff must establish that a defendant acted with "deliberate indifference" by showing both a: (1) subjective knowledge of a risk of serious harm (i.e., both awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and the actual drawing of the inference); (2) disregard of that risk; and (3) conduct that is more than gross negligence. Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005).

"Whether a particular defendant has subjective knowledge of the risk of serious harm is a question of fact 'subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Goebert v. Lee County, 510 F.3d 1312, 1327 (11th Cir. 2007) (quoting Farmer v. Brennan, 511 U.S. 825, 842 (1994)). "Deliberate indifference" includes "the delay of treatment for obviously serious conditions where it is apparent that delay would detrimentally exacerbate the medical

problem," where "the delay does seriously exacerbate the medical problem," and where "the delay is medically unjustified." Harper v. Lawrence Cnty., 592 F.3d 1227, 1235 (11th Cir. 2010) (quoting Taylor, 221 F.3d 1254, at 1259 (11th Cir. 2000)); see also McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999); Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir. 1994); Brown v. Hughes, 894 F.2d 1533, 1537-39 (11th Cir. 1990). A delay of even hours may be deliberate indifference given the "reason for the delay and the nature of the medical need." McElligott, 182 F.3d at 1255. However, "[a]n inmate who complains that delay in medical treatment [rises] to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay." Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1187 (11th Cir. 1994), abrogated on other grounds Hope v. Pelzar, 536 U.S. 730 (2002).

The record contains a genuine issue of material fact concerning whether Defendants Bertuzzi, Fenech, Cox, Geyer, and Risi acted with deliberate indifference to Plaintiff's serious medical conditions. There is evidence upon which the jury could rely to find Geyer and Risi acted with deliberate indifference when they failed to allow Plaintiff a shower to decontaminate from chemical spray for three hours after he stopped resisting. Plaintiff provides evidence of injuries sustained from leaving the spray during this time period. Defendants' attempt to analogize Plaintiff's situation to Scoggins v. Davis, 346 F. App'x 504 (11th Cir. 2009) is unavailing. At issue in Scroggins was only an excessive use of force claim under the Eighth Amendment, not a medical deliberate indifference claim. See Scroggins v. Davis, 2:05-cv-610-FtM-34-SPC (M.D. Fla. 2007), Doc. #103 at 12-25.

Plaintiff has sufficiently raised disputed issues of material fact such that he should be permitted to try to prove his constitutional violations at trial.   Therefore, the Court finds the respective motions for summary judgment filed by Defendants and partial summary judgment on behalf of Plaintiff are due to be denied.

### 4.   Supervisory Liability

Section 1983 claims may not be brought against supervisory officials on the basis of vicarious liability or *respondeat superior.*   Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010).   Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation. Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).   The causal connection can be established by showing that (1) the supervisor had notice of a history of widespread abuse, which he neglected to correct; (2) the supervisor implemented a custom or policy that resulted in deliberate indifference to constitutional rights; or (3) the facts support an "inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (quotations omitted).

Plaintiff has sufficiently raised disputed issues of material fact as to the actions or inactions of Defendants Bertuzzi and Wilson in their supervisory capacities such that Plaintiff should be permitted to try to prove constitutional violations at trial.   Bertuzzi participated in the application of chemical agents.   Wilson participated in the CERT extraction, after which Plaintiff was held for approximately four hours in a restraint chair during which time he was not permitted a shower to decontaminate.   Therefore, the Court

finds the respective motions for summary judgment filed by Defendants on this issue are due to be denied.

### D.   Qualified Immunity

Defendants assert entitlement to qualified immunity in their respective motions. Doc. #210 at 32; Doc. #211 at 18-19 (incorporating by reference the argument set forth in the Risi-Cox motion at Doc. #210); Doc. #212 at 15 (same); Doc. #215 at 24-25 (same); Doc. #216 at 15-16 (same).   Defendants each assert that they acted in their "discretionary authority."   Defendants argue that because they were acting in their discretionary authority, the burden is on Plaintiff to show that established law provided notice that the Defendants' respective actions violated clearly established law, that a reasonable official would have understood his acts were unlawful.   With respect to Defendant Risi in particular, Defendant argues that his "conduct of sticking a broomstick through the food port to move the sleeping pad aside was not unconstitutional."   Doc. #210 at 34.   Plaintiff opposes Defendants' argument in its entirety, arguing *inter alia* that once Plaintiff stopped resisting Defendants, any force thereafter was excessive and in violation of clearly established law.

"The Supreme Court has developed an objective-reasonableness test for evaluating actions of a government official claiming qualified immunity: the officials' action must be evaluated against "clearly established law," consisting of statutory or constitutional rights that a reasonable person should have known."   Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991) (citing Harlow, 457 U.S. at 818).   "This objective-reasonableness test provides qualified immunity protection to "all but the plainly

incompetent or those who knowingly violate the law." Id. (citations omitted).   As set forth

by the Eleventh Circuit in Courson:

> In Rich, this circuit derived a two-part analysis for applying the objective-reasonableness test to a qualified immunity defense:
>
> 1.   The defendant public official must first prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."
>
> 2.   Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is met by proof demonstrating that the defendant public official's actions "violated clearly established constitutional law."

Id. at 1487 (quoting Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1993) (per curiam);

Hutton, 919 F.2d at 1537)).

To show an official was acting within his discretionary authority, a government

official must show "objective circumstances which would compel the conclusion that his

actions were undertaken pursuant to the performance of his duties and within the scope

of his authority."   Id. (citations omitted).

The second component, whether the government official violated clearly

established law, consists of a two subparts:

> First, the reviewing court must decide whether the applicable law was clearly established when the government action occurred.   Id. (citing Rich, 841 F.2d at 1563-64) (citing Harlow, 457 U.S. at 818; Hutton, 919 F.2d at 1538; See Barts v. Joyner, 865 F.2d 1187, 1190 (11th Cir.) ("To defendant a qualified immunity defense, plaintiff bears the burden of showing that 'the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or . . . the law clearly proscribed the actions the defendant . . . took.'"   Id. (quoting Mitchell, 472 U.S. at 528, cert. denied, 493 U.S. 831. "Clearly established," is defined, with reference to the right that the official is alleged

> to have violated, as meaning that [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987).
>
> Second, the court must determine whether there is a genuine issue of material fact concerning the government official's conduct being in violation of clearly established law. Id. (citing Rich, 841 F.2d at 1563-54); Hutton, 919 F.2d at 1538; see, e.g., Herren v. Bower, 850 F.2d 1543, 1546-47 (11th Cir. 1988); Webb v. Ethridge, 849 F.2d 546, 550 (11th Cir. 1988)(Genuine issues of material fact precluded summary judgment based on qualified immunity.).

Id. at 1487-88.   A government official can be put on notice that his actions will violate a constitutional or statutory right by one or more of three sources: (1) a specific constitutional or statutory provision; (2) a legal principle announced by a decision from a court with jurisdiction over the place where the violation of rights was committed; and (3) a case with similar facts that has already been decided by one of those courts.   Goebert, 510 F.3d at 1330.

The Court denies Defendants' respective motions based on qualified immunity based on this record.   Plaintiff initially disputes whether Defendants were acting in their discretionary authority.   Defendants appear to presume they were acting within their discretionary authority as correctional deputies.   See Doc. #210 at 33.   Plaintiff points to several county jail policies that the deputies did not follow in attempt to show Defendants were not acting in their discretionary authority.   Doc. #236 at 16-17.

Irrespective of whether Defendants were acting within their discretionary authority, simply said, a qualified immunity defense is not available for excessive use of force claims.   As noted by the Eleventh Circuit:

> It is different with claims arising from the infliction of excessive force on a prisoner in violation of the Eighth Amendment Cruel and Unusual Punishment Clause.   In order to have a valid

claim on the merits of excessive force in violation of that constitutional provision, the excessive force must have been sadistically and maliciously applied for the very purpose of causing harm.   Equally important, is it clearly established that all infliction of excessive force on a prisoner sadistically and maliciously for the very purpose of causing harm and which does cause harm violates the Cruel and Unusual Punishment Clause.   **So, where this type of constitutional violation is established there is not room for qualified immunity.**

Johnson v. Breeden, 280 F.3d 1308, 1321-22 (11th Cir. 2002) (emphasis added); Skrtich v. Thornton, 280 F.3d 1295 (11th Cir. 2002).   This law was clearly established when the incident occurred on September 7, 2008.   Johnson, 280 F.3d at 1321 (citing Hudson v. McMillian, 530 U.S. 1 (1992); Whitley v. Albers, 475 U.S. 312 (1986)).   And, the record here contains evidence showing a genuine dispute of material fact concerning whether the Defendants acted maliciously and sadistically for the purpose of causing harm to Plaintiff.

Defendants' argument that there was no clearly established law that makes it unconstitutional to use a broomstick during the use of force is an attempt to have this Court look at "each individual blow" to see which, if any, used excessive force.   See Skritch v. Thornton, 280 F.3d 1295, 1302 (11th Cir. 2002) (rejecting defendants' argument that the force administered by each defendant in a collective beating must be analyzed separately to determine which of the defendants' blows, if any, used excessive force."); Danley v. Allen, 540 F.3d 1298, 1306 (11th Cir. 2008) (viewing the spraying incident followed by the delay and failure to decontaminate the plaintiff properly as **one single excessive use of force claim** (emphasis added)).   Similar to Danley, this case involves both application of chemical agents followed by restraint without decontamination for four hours.   And there is evidence upon which a jury could rely to find Plaintiff continued to be held in this manner for three hours after he had stopped resisting the officers.   Plaintiff

has not asked the Court to review each incident separately and the Court will not do so at Defendants' urging based on the aforementioned precedent.

Likewise, Defendants are not entitled to qualified immunity on the deliberate indifference to Plaintiff's serious medical condition claims. This is a case where general legal principles announced in decisions from the United States Supreme Court and the Eleventh Circuit in this area of law are enough to make the right violated clearly established. See McElligott, 182 F.3d at 1256 ("[P]rison officials with knowledge of [a serious] need for care may not . . . provid[e] grossly inadequate care, caus[ing] a prisoner to needlessly suffer pain resulting from his or her illness); Ancata v. Prison Health Servs. Inc., 769 F.2d 700, 704 (11th Cir. 1985) (stating that a jailer may be deliberately indifferent if the treatment provided is "so cursory as to amount to not treatment at all"); Danley , 540 F.3d at 1298 (discussing how leaving chemical agents on inmate's skin without proper decontamination constitutes a serious medical need). All of this precedent was established prior to September 7, 2008, when this incident occurred.

### III. Plaintiff's Motion to Amend

Plaintiff moves to modify the Court's scheduling order and for leave to file a Third Amended Complaint. See Doc. #228. Specifically, Plaintiff wishes to add Defendants Wilson and Geyer under the excessive use of force count; add Defendant Geyer to the failure to train and supervise count; add Fenech, Cox, Geyer, and Risi in the conditions of confinement count; and add two additional counts to clarify the equitable relief sought. Defendants oppose the motion. See Doc. #252.

The Court will grant Plaintiff's motion, in part. The Court grants Plaintiff's motion to the extent he wishes to clarify the relief he seeks in the Second Amended Complaint.

The Second Amended Complaint did request "such other relief in law or equity which this Court deems just and proper."   See e.g. Second Amended Complaint at 16.   Thus, to the extent Plaintiff wishes to clarify that he seeks declaratory relief, citing Thomas v. Bryant, 614 F.3d 1288 (11th Cir. 2010), inter alia, and injunctive relief, his motion is granted.   Otherwise, the motion is denied because it was filed after the close of discovery, after the deadline for the motions for summary judgment, and on the eve of trial.   Lowes Home Centers, Inc. v. Olin Corp., 313 F.3d 1307, 1315 (11th Cir. 2002).

ACCORDINGLY, it is hereby **ORDERED**:

1.   The Defendants' respective motions for summary judgment (Docs. #210, #211, #215, #216) are **DENIED**.

2.   Plaintiff's partial motion for summary judgment (Doc. #222) is **DENIED**.

3.   Plaintiff's motion to modify the scheduling order and file a Third Amended Complaint (Doc. #228) is **GRANTED** in part as set forth above and otherwise **DENIED**. Plaintiff must filed the Third Amended Complaint within **two (2) business days** of the issuance of this Order.

**DONE** and **ORDERED** in Fort Myers, Florida on this 2nd day of September, 2015.

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**

FTMP-1
Copies: All Parties of Record